Good morning, Your Honors. Doug Keller on behalf of Mr. Corrales. The dispositive issue on appeal in this case is what Congress meant in 8 U.S.C. section 1325A2 when it made it a crime to elude examination or inspection by immigration officers. According to the government's interpretation of that phrase, everyone who commits the entry offense, that is, everyone who enters the United States at a non-designated time or place, has also eluded examination and inspection. Thus, you could just delete the word entry from A1 and the statute would operate exactly the same way. And even the government could have prosecuted it. Is there any construction of A1 and A2 that would allow for a violation of A1 without violating A2? Yes. And that's, I think, both of my interpretations. I'm sorry. The government's interpretation. The government's reading of this. I don't believe so. I don't think the government has ever denied that. They've never identified any fact pattern. It's not unusual for us to have statutes that might cover overlapping offenses. But it's one thing when something is utterly circumscribed within a second provision. Yes. And I appreciate that distinction. I think that's the distinction my interpretation sort of highlights, which is that I agree, under my interpretation, there's going to be overlap, just like any statute. But there isn't surplusage. And I think under the government's interpretation. Your reading is that eluding is that you present yourself at a port of entry and somehow get through without inspection by misrepresenting yourself or something else. Misrepresenting would also be covered under A3. Correct. I mean, I think maybe there's a little more nuance there. I think I would say you don't need to present yourself, but anyone who sneaks in at or near a port. So, for instance, someone who is snuck in in a trunk of a car, for instance, would be guilty of A2. That's sort of the classic fact pattern we used to always see. And really, the only situation which they would charge a client with A2. But so that the government's construction of the statute violates the anti-surplusage canon, which this court and the Supreme Court have continually referred to as fundamental and one of the most basic interpretive canons. So I think for that reason alone, whatever A2 means, it can't mean what the government suggests. So you're just saying your client was charged under the wrong subsection of the statute? Yes. Ultimately, yes. But, you know, I think if the government had brought an A1 case against my client, they probably could have convicted him. But instead, they charged him with A2. Why would the government charge one versus the other when we wouldn't be sitting here if they had charged the other one? Honestly, I don't know. For as long as I've practiced in the district, a client like this would be charged with A1. They would choose either the entry or attempted entry. And I guess about a year ago now, when Attorney General Sessions started zero tolerance in our district, they started charging everyone with A2. Is there any difference in the sentence or? There's not. It's the same thing. Any other immigration consequences? There's not. My only speculation, this is just my speculation, is that the administration wanted to charge asylum seekers who basically, when the port was shut down, they would go around the port and turn themselves in immediately. Those people, that's pretty much the one fact pattern in which you're not guilty under A1. And so my speculation is that that would allow them to charge those people with A2. But I honestly don't know why they changed their practice. So ultimately, what I'm asking this court to do is simply to reinstate what this district or my district have been doing for decades, which is that if you sneak in around the port, they'll charge you with A1. If you're one of the rare defendants who tries to sneak in at the port, they'll charge you with A2. And if you get in by lying, that's A3. And I think that makes sense of 1325 as a whole. And it ensures that each subsection is not entirely subsumed by another subsection. So I'm happy to answer any questions, but otherwise I'll reserve the rest of my time. All right. Thank you. May it please the court, Benjamin Hawley for the United States. To answer your question about why we choose A2 versus A1, Mr. Keller is correct. There's no difference in penalties or immigration consequences, anything of that nature. There are basically two reasons, one statutory and one practical. On the statutory side, looking at what people like Mr. Corrales have done, jumping the fence far away from a port of entry, sneaking in, in the government's view, eluding examination and inspection accurately describes exactly what he did. The plain text of the statute applies. But inspection has a sort of a technical meaning when we're talking about at the border, right? Well, in that it takes place at ports of entry. And there's also the medical examination that appears that the statute is referring to. Correct. And those take place at ports of entry. So by avoiding that, by going around the port of entry, you are eluding that examination and inspection. You're avoiding it, escaping it, avoiding detection, all of the definitions that this Court used in Oscar to define what elude means. But you're also entering or attempting to enter the United States at any time or place other than it's designated by the immigration officers. Correct. Yes, both, for Mr. Corrales, both statutes. Is there any instance in which somebody in Mr. Corrales' position could not be charged with both A-1 and A-2? Yes, there are situations where you could be charged with A-2 but not A-1, but we have not. But that would be, and that would be the hiding in the trunk. Correct, or being a port runner that happens somewhat often as well. Right, but somebody who's crossing not at a port of entry, you now have complete, A-1, A-2, A-2 is completely subsumed A-1. So A-1 includes attempts and entry, which brings in the official restraint concept. But I agree that we have not identified factual scenarios where you would be guilty of A-1 but not A-2. That said, that doesn't end the analysis for a couple of reasons. The first is that, as the Supreme Court has repeatedly told us, surplusage is certainly a factor. This is not just surplusage, this is circumscription. I can't say that word very well. I should have chosen a different word. And even under, so the second point, even under Mr. Corrales' interpretation, you're still going to have the surplusage or entirely removing that. The statute I point to there, we mentioned in one of our footnotes, is 19 U.S.C. 1459. In that case, it requires that you, or that statute requires that you present yourself to immigration officers to enter the United States and submit to examination and inspection. If you do not, you violated the law. Is one easier to prove or the other? I mean, I'm still trying to find an explanation for why all of a sudden, because I've never seen this either, and now all of a sudden we have several cases. Well, so all of a sudden it's not, 1325 generally wasn't being charged for these times before. A1, A2, any of them, it often was going to be a 1326 or not at all. The second answer is, it's not as though if we'd chosen A1, there suddenly would be no challenge from the defense. In fact, we, in a prior case, Aldana, where we had charged A1, they argued that the entire port of entry, or the entire city of Otay Mesa, constituted the port of entry. They've attacked the alienage prong that applies to A1, A2, and A3 as facially unconstitutional. Mr. Kellner and his colleagues, to their credit, are very creative in coming up with ways to challenge these statutes. Well, I mean, obviously they're entitled to put on a defense. Oh, no, absolutely, as they should. What I'm saying is that it's not as though if we chose A1, we wouldn't be here. We would be, and we have been previously on other cases. We chose A2 because we're going to get a challenge to this either way, as we should, and we think that this accurately describes. Is it easier to prove A2? No, I don't think so. There might be. It seems like it might be. How would you prove it? So, as we did in this case, we had one witness who testified that he and his colleagues followed footprints from near the border for several hours, about four miles in. They find Mr. Corrales and a couple others hiding in some thick brush, and then they ask him, you know, are you a citizen, where are you a citizen of Mexico? Do you have any right to be here? No, and then we use that evidence, along with the circumstantial evidence of where he was found. No one else goes there. It's a very rough, rural, rugged area to demonstrate that he illegally crossed the border. But how do you prove that he wasn't examined or inspected? Do you prove that with records? No, so it would be circumstantial. Absence of the record, nothing like that? Correct. So if he'd been closer to a port of entry where maybe he came through and then kind of went off the road, I think that issue would come up. But that would be his burden to show? No, I mean, ultimately, the burden is always with us to show that he eluded the examination or inspection. But here... Right, but how do you prove that negative? Because with the circumstantial evidence, as Judge Curiel, when looking at this, found he's 20 miles from the port of entry in an area that no one would normally go unless you're hiking up from the border. And again, they found the footprints that they tracked up from the border. So there was no evidence or any reason to believe that he lied his way through the port, for example. Counsel, you said you were going to give us a couple of reasons. One textual and one practical. Have you covered the practical reason? The practical reason was that... A1, it was just a little more complex. And we had creative arguments about whether the entire city of Otay, Mesa was included in the port of entry. It's not that it's more complex. It's that there was going to be a challenge either way. We were going to end up here had we chosen A1 or A2. So that wasn't a determining factor for us. Mr. Keller suggested that there might be reasons related to people applying for asylum. We didn't choose this to prosecute people that are applying for asylum. The proper way to apply for asylum is not a criminal offense. You go to the port of entry, claim asylum or whatever other, you know, documents you're seeking and you're trying to get visas, things of that nature. That's perfectly legal. In fact, that's why... Does the choice to choose A1 or A2 with respect to people who are caught outside of the port of entry and are applying for asylum make a difference? Only if... I don't think so. The only situation it would be is depending on the intent. So if we charge, for example, attempt to enter under A1, if they had the intent to find, to seek out an officer immediately, then they may have eluded but not have violated the intent, the attempt language. That's not come up in any of these cases that I'm aware of. And certainly not for Mr. Corrales. He's one mile in. The attempt language looks like it was, it may have been added in response to our decision in Oscar, which dealt with the official control doctrine. Does that, has that played any, is that playing any role in the way that you're deciding to charge these? So our argument, and Mr. Corrales doesn't take a position here is my understanding, but there are plenty of other cases in the pipeline coming to this court. Our argument is that official restraint does not apply to A2 and it does apply to A1. The reason being the word entry is specifically used in 1 and 3. And it's that word, our position is that kind of incorporates or brings along with it the official restraint doctrine. And A2, by not including that, does not, similar to our argument here that Congress knew how to and did limit geographically the scope of the statute when it wanted to, as it did in A1. And it did not do so in A2, which is obviously a canon of construction as well, that if you use language in one section and omit it in another, it's presumed that Congress is doing that intentionally and purposefully. So again, we recognize that there are certainly surpluses, certainly overlap in A2 and A1, but ultimately that's because this is not a situation where Congress is trying to, is looking at the same type of action and trying to carve out innocent conduct from culpable conduct. They're covering the gaps. They are trying to avoid any loopholes and surpluses, as the Supreme Court has said, is just a clue. And in this case, it should not be a clue that overturns the statute or cabins the statute in a way that makes it apply only at the courts of entry. Unless the Court has any further questions, we ask that you affirm. Thank you. Just a few quick points. First, the canon against surplusage is not just a clue. It's probably the most important clue. That's why this Court and the Supreme Court have continually referred to it as fundamental and basic. And on top of that, one of the few things this Court and the Supreme Court have said about the canon is that it should almost certainly apply when it's a question of what the elements of the criminal offense are, which is what this is. And it should almost certainly apply when it involves surplusage in the same exact statute. I think some of the canons of interpretation are a little counterintuitive. I think one of the few that isn't is this one, just the basic idea is why would Congress have created the A1 crime only to essentially make it irrelevant and pointless in A2, and the government's never really given this Court a reason why Congress would have done that, and so I do think that, at the end of the day, is fatal to their argument. I think the only thing Mr. Hawley said about why they want to charge A2 as opposed to A1 is that A1, I guess, is a little more complex, but I don't think that's a reason to essentially write out a statute A1, I think that's the reason why Congress obviously wanted those hurdles and the government needs to clear those hurdles, and they didn't in this case. One final brief point about 1459, that's the statute the government referenced that they claim is also potentially surplusage under my reading. 1459 is a very different statute, it applies to anyone, not just aliens, so a U.S. citizen can violate 1459, so it covers a lot more people. It also has the requirement of a prompt resentment, so if someone can enter the United States and they're guilty of 1325, but they're not necessarily guilty of 1459 if they then promptly present themselves for an inspection. So unless the Court has any questions, I'm happy to stop talking. Thank you. Thank you. The United States v. Corrales-Vasquez is submitted.
judges: Fernandez, Wardlaw, Bybee